**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

THERESA LOMAS,

     Plaintiffs,

v.                                                      Case No. 6:22-CV-00679-PGB-DCI
                                                        LEAD CASE

HEALTH INSURANCE ASSOCIATES
LLC,

     Defendants.


ROBIN TAYLOR,

     Plaintiffs,

v.                                                      Case No. 6:22-CV-01564-PGB-DAB

HEALTH INSURANCE ASSOCIATES
LLC,

     Defendants.

---

**MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

Plaintiffs and Defendant Health Insurance Associates LLC reached a class action settlement agreement ("Settlement Agreement" or "Agreement")[1] that establishes a non-reversionary Settlement Sum in the amount of $990,000 for the benefit of the Class. Defendant has also agreed, as a result of this Action, to institute enhanced policies and procedures to ensure compliance with the TCPA. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled legal questions, including regarding the constitutionality of the Telephone Consumer Protection Act.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary approval of the Settlement;

2. Preliminary certification of the Settlement Class and appointment of Plaintiffs as class representatives and Avi Kaufman as Class Counsel;

3. Approval of the Settlement Administrator;

4. Approval of the Notice Plan describing: (a) the Settlement and Settlement Class Members' rights; (b) the proposed release of claims; (c) Class Counsel's request for attorneys' fees and expenses; and (d) the procedures for opting-out of and for objecting to the Settlement.

5. Approval of the claims process; and

6. The scheduling of a Final Approval Hearing to consider final approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of preliminary approval for several reasons. *See* Declaration of Avi R. Kaufman

---

[1] The Settlement Agreement is attached hereto as Exhibit 1. All capitalized terms used herein have the same definitions as those defined in the Agreement.

(attached as Exhibit 2) at ¶ 2. First, it provides immediate monetary and remedial relief, including preventing further unsolicited telemarketing calls, for Settlement Class Members where their recovery, if any, would otherwise be uncertain given Defendant's consistent denials of all liability and its vigorous defense of the litigation. *Id*. Second, the Settlement was reached only after significant discovery into the issues in the case, including the manner of Defendant's calls, the number of calls, the recipients of calls, and the strength of the Defendant's defenses. Third, prior to reaching the Settlement, the parties engaged in extensive arm's-length negotiations, including a full-day mediation before mediator Daniel Methe, with Matrix Mediation. *Id*. Fourth, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or service award for Plaintiff, underscoring the fairness of the process. *Id*. For all these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    BACKGROUND

### a. <u>The Telephone Consumer Protection Act</u>

The Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we

---

[2]    FCC, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).  As a remedial statute that was passed to protect consumers from unwanted automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

### b.  <u>Procedural History and Facts</u>

On April 7, 2022, Plaintiff Lomas filed the Complaint against Defendant in this action asserting claims under the TCPA's prerecorded voice call provision (ECF 1). On May 23, 2022, Defendant answered the Complaint denying all liability (ECF 13).  The parties then participated in a Rule 26 conference and prepared a joint scheduling report and discovery plan (ECF 18).

Thereafter, the Parties engaged in written discovery involving a set of written discovery to Defendant, a set of discovery requests to Plaintiff, meet and confers through which the parties were able to resolve their discovery disputes without the need for motion practice, Plaintiff's subpoenas to Defendant's third party vendors involved in telemarketing, and Plaintiff's review of more than ten thousand pages of electronic documents relating to Defendant's calling practices and defenses. Kaufman Decl. ¶ 4.

On August 30, 2022, Plaintiff Taylor filed her Complaint against Defendant asserting claims under the TCPA's prerecorded voice call provision and National Do Not Call Registry provisions (Case No. 6:22-cv-01564, ECF 1). On October 12, 2022, Defendant answered the Complaint denying all liability (Case No. 6:22-cv-01564, ECF 10). After the parties met and conferred, on November 21, 2022,

Defendant filed an unopposed motion to consolidate the Taylor and Lomas cases. The cases were consolidated the next day.

On February 6, 2023, the Parties engaged in a full-day, mediation with Daniel Methe of Matrix Mediation. *Id*. at ¶ 5. The Parties engaged in further negotiations ultimately reaching an agreement in principle as to a class wide resolution, culminating in the Settlement Agreement. *Id*.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potential appeals. Kaufman Decl. ¶ 6. Plaintiffs' counsel has considered the strength of Defendant's defenses, Defendant's consistent denials of liability, difficulties in obtaining class certification and proving vicarious liability, the uncertain outcome and risk of the litigation especially in complex actions such as this one, the inherent delays in such litigation, and, in particular, the risk that a change in the law, including a ruling by this Court concerning the constitutionality of the TCPA, could nullify Plaintiffs' claims. *Id*.; *Creasy v. Charter Communs., Inc.*, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr v. Am. Assn. of Political Consultants, Inc.*, 140 S. Ct. 2335, 591 U.S. ___, (July 6, 2020), are not actionable because the TCPA was unconstitutional until a 2015 amendment was severed in *Barr*). Plaintiffs' counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Class whereas continued and protracted litigation, even if successful, might ultimately deliver none. *Id*. Based on their evaluation of all these factors, Plaintiffs and Plaintiffs' counsel have determined that the

Settlement is in the best interests of Plaintiffs and the Class. *Id*.

### III.    SUMMARY OF THE SETTLEMENT TERMS

The following provides a summary and discussion of the Settlement's material terms.

#### a.  The Settlement Class

The proposed Settlement establishes a Class of: All users or subscribers to telephone numbers that received two or more telemarketing calls in a 12-month period from Leads Mogul LLC that were forwarded to Health Insurance Associates, LLC more than 30 days after their telephone numbers were registered with the National Do Not Call Registry. Agreement at ¶ 1.1.9.

#### b.  Settlement Consideration

Pursuant to the Settlement Agreement, upon preliminary approval, Defendant will cause to be created a common fund in the amount of $990,000. The Settlement Sum will be used for payments for (a) Settlement Class Members, (b) administrative expenses, including notice, and (c) Representative Plaintiffs' attorneys' fees and costs.  Agreement at ¶ 1.1.38.  Moreover, as a result of this litigation, Defendant will institute enhanced policies and procedures to ensure compliance with the TCPA. Agreement at ¶ 4.4.

#### c.  Settlement Administrator

Pending this Court's approval, AB Data, Ltd. will serve as the Settlement Administrator.  The Settlement Administrator's responsibilities include: i. providing CAFA notice; ii. establishing and maintaining the Class Settlement Website; iii. providing direct mailed notice, and, where an email address can be identified by the

Parties, direct emailed notice; iv. providing Notice through the Class Settlement Website; v. receiving, evaluating, and processing Claim Forms; vi. advising Settlement Class Members if their Claim Forms are deficient; vii. providing reports about the Notice Plan and number and identity of opt-outs (if any) to Class Counsel; viii. responding to any Settlement Class Member inquiries; ix. processing all opt-out requests from the Settlement Class; x. performing the duties described in the Agreement, and any other function related to Settlement administration at the joint instruction of Class Counsel and Defendant; and xi. distributing claim payments to the Settlement Class Members that file Approved Claims, as detailed in the Agreement. Agreement at §§ 6 and 7.

The anticipated notice and administration costs are approximately $110,000. Kaufman Decl. ¶ 7. Those costs are reasonable in light of the costs for, among other things, emailed and mailed notice, claim verification, and distribution of settlement funds to more than 50,000 Settlement Class Members. *Id.*

### d.  <u>The Notice Plan</u>

The Settlement Administrator will be responsible for administrating the Notice Plan.  The Notice Plan consists of two different components: (1) direct mailed and emailed Summary Notice; and (2) Notice to be provided on the Class Settlement Website. Agreement at § 6. The forms of the proposed Notice and Summary Notice agreed upon by Plaintiffs' Counsel and Defendant, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits B and C.

The Notice Plan is designed to provide the Class with important information regarding the Settlement and their rights thereunder, including a description of the

material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or "opt-out" of the Settlement; a date by which Settlement Class Members may object to the Settlement; the process for submission of and a date by which a valid and timely Claim Form must be submitted; Class Counsel's fee application and/or the request for a service award; the date of the Final Approval Hearing; and information regarding the Class Settlement Website where Settlement Class Members may access the Agreement and other important documents. The Notice Plan here is straightforward, easy to understand for Settlement Class Members, and designed to inform members of their rights under the Agreement. Kaufman Decl. ¶ 7. The Settlement Administrator shall send direct notice within thirty (30) days after the Court enters the Preliminary Approval Order. The Notice Plan is therefore consistent with or exceeds other court-approved notice programs, is the best notice practicable under the circumstances of this case, and has been designed to satisfy the requirements of due process, including its desire to actually inform requirement. *Id*.

### e.  **Opt-Out and Objection Procedures**

Any Settlement Class Member who does not wish to participate in this Settlement must write to the Settlement Administrator pursuant to the terms in the Settlement stating an intention to be excluded from this Settlement. This written request for exclusion must be sent by mail to the Settlement Administrator at the address set forth in the Notice and postmarked no later than the Opt-Out Deadline. Settlement Class Members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendant, subject

to any defenses that Defendant may have against those claims. Agreement at ¶ 9.4.

Any objection to the Settlement Agreement, including any of its terms or provisions, must be in writing, and filed with the Court or mailed to the Clerk's Office.  If an objecting party chooses to appear at the hearing, no later than the Opt-Out Deadline, a notice of intention to appear, either in person or through an attorney, must be filed with the Court and list the name, address, and telephone number of the person and attorney, if any, who will appear. Agreement at ¶ 9.2.

### f. **Release of Claims**

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members agree to release the claims set forth in paragraph 1.1.31 of the Agreement.  The Released Claims are narrowly defined to the subject matter of this action and release only claims that were brought in the Litigation, arise from the telemarketing conduct alleged in the Complaint, or relate to the manner and making, or attempted making, of telemarketing calls to Settlement Class Members by or on behalf of Defendant within the four years before filing. Moreover, Leads Mogul LLC and any related entities that are not Released Parties as defined in the Settlement Agreement are not released by this settlement and class members expressly may continue their claims against Leads Mogul LLC. Kaufman Decl. ¶ 8.

Separately, Defendant has agreed to pay each Representative Plaintiff $5,000, subject to Court approval, in the interest of compromising Plaintiffs' individual claims not released in the Settlement Agreement against Defendant, as well as resolving all outstanding issues between Defendant and Plaintiffs through the Effective Date.  This payment to Plaintiffs will be paid by Defendant directly and

will not be paid from the Settlement Sum. Agreement at ¶ 4.3.

### g.  Claims Process and Calculation of Approved Claim Payments

Each member of the Class who does not timely opt-out from the Settlement shall be a Class Member and entitled to make a claim.  The form of the proposed Claim Form agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, is attached to the Settlement Agreement as Exhibit A. Each Class Member who makes an Approved Claim shall be entitled to a Claim Settlement Payment in an amount not to exceed their proportionate share of the Settlement Sum after the payment of settlement administration, expenses, and any fee award. Agreement at § 4.

### h.  Distribution of Settlement Fund

Within sixty (60) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall pay from the Settlement Sum all Approved Claims by check made payable to the Class Member submitting each Approved Claim.  To the extent that any checks to Class Members expire and become null and void, the Settlement Administrator shall distribute the funds associated with those checks on a *pro rata* basis to Settlement Class Members who submitted an Approved Claim and who cashed their checks, if doing so is administratively and economically feasible. Agreement at ¶ 7.4.

### i.  Class Counsel Fees and Expenses

Defendant has agreed to pay from the Settlement Sum reasonable attorneys' fees of up to one-third of the Settlement Sum and costs to Class Counsel, in an amount approved by the Court. Agreement at § 5.

Class Counsel intends to apply to the Court for attorneys' fees totaling not more than one-third of the Settlement Sum ($330,000) and documented and reasonable expenses and costs incurred in the litigation. Class Counsel's application for fees, expenses, and costs and the request for a service award shall be filed no later than thirty-five (35) days prior to the Opt-Out Deadline.  If the Court approves the Settlement, but declines to award a Fee Award in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties and the Settlement Class Members. Agreement at § 5.

The Court should consider whether to grant or deny this award separate and apart from its consideration of the Settlement's fairness and reasonableness.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### a.  <u>The Legal Standard for Preliminary Approval</u>

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *E.g.*, *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *E.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly

in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Approval of a class action settlement is a two-step process. The Court's first step in the process of granting preliminary approval of a settlement is to determine that the proposed settlement class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, the plaintiff must demonstrate that the proposed class and proposed class representative meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4).

The standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *Manual for Compl. Lit.* § 1.46 at 62, 64-65 (1982)); *see also Newberg on Class Actions* § 13:13 (5th ed. 2016) ("courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *7 (S.D. Fla. June 15, 2010); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

The Court should take the first step in the process and grant preliminary approval of the Settlement. The Settlement is clearly within the range of reasonableness and satisfies all standards for preliminary approval. In fact, the Settlement provides immediate and significant monetary and injunctive relief.

### b.  <u>The Settlement Satisfies the Criteria for Preliminary Approval</u>

Prior to formal class certification, a preliminary fairness determination is appropriate "if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *De Cabrera v. Swift Beef Co.*, 2020 U.S. Dist. LEXIS 164615, at \*13 (C.D. Cal. June 25, 2020); *see also Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988) ("A strong initial presumption exists in favor of a proposed settlement where the proponents establish that: (i) the settlement is not collusive …; (ii) the proponents have counsel experienced in similar cases; (iii) there has been sufficient discovery ….").

Each of the relevant factors weighs heavily in favor of preliminary approval of this Settlement. Kaufman Decl. ¶ 9. The Settlement was the result of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to any segments of the class. *Id*.

### i.  The Settlement Agreement is the Product of Serious, Informed and Arm's Length Negotiations

First, the proposed Settlement is the product of serious, informed, non-collusive negotiations. *E.g.*, *Cotton*, 559 F.2d at 1330. Settlements are generally

found to be non-collusive when reached with the assistance of a third-party neutral, *e.g., Boring v. Bed Bath & Beyond of Cal. LLC*, 2013 U.S. Dist. LEXIS 165909, at *21 (N.D. Cal. Nov. 21, 2013), and are found to have been informed where the parties exchanged evidence and information prior to negotiations. *E.g.*, *Moshogiannis v. Sec. Consultants Grp., Inc*., 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Feb. 8, 2012) (approving settlement where "the parties conducted a significant amount of informal discovery…"). Here, the Settlement was negotiated with the assistance of David Methe during a full day mediation. Kaufman Decl. ¶ 10. Moreover, Plaintiff had the benefit of significant discovery prior to finalizing the Settlement, including Defendant's written discovery responses, tens of thousands of pages of electronic documents produced by Defendant and Defendant's call vendor Leads Mogul all relating to the critical merits issues in the case, including the manner of the subject calls, the number of calls, the recipients of calls, and the strength of the Defendant's defenses. Kaufman Decl. ¶ 11. Class Counsel's understanding of the key issues driving the litigation, including the likelihood of class certification, the strength of Defendant's defenses, and the ever-shifting TCPA law landscape prepared them for well-informed settlement negotiations. *Id*.

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case. *Id*. Class Counsel have extensive experience and expertise prosecuting complex class actions, and are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. *Id*. at ¶¶ 12-17. Class Counsel zealously represented Plaintiffs and the Class

Members' interests throughout the litigation and will continue to do so. *Id*. at ¶ 18. The Settlement is therefore the result of serious, arm's-length, and informed negotiations justifying preliminary approval.

### ii.  There Are No Obvious Deficiencies in the Settlement

The Settlement is reasonable and fair because it provides an excellent monetary result for Class Members and meaningful injunctive relief in return for a narrow release tailored to the conduct and claims presented in the Litigation. Payments from the Settlement Sum that are not successfully delivered to claiming Settlement Class Members will be divided among other Class Members who do claim their initial distributions, if administratively feasible. While payments for attorneys' fees and expenses are to be paid from the Settlement Sum, the Settlement is not conditioned on any such award and Defendant retains the right to object to any request for such award.

Additionally, the Settlement includes a comprehensive Notice Plan, which provides notice to Class Members of, among other things, the Settlement's opt-out and objection provisions, as well as their right to file claims. The Settlement also provides for a Settlement Administrator to coordinate notice to the class, any requests for exclusion, claims processing, and payments to Class Members upon final approval.

Accordingly, there are no obvious deficiencies in the Settlement, and preliminary approval is warranted. *E.g., De Leon v. Ricoh USA, Inc.*, 2019 U.S. Dist. LEXIS 204442, at *31 (N.D. Cal. Nov. 25, 2019).

### iii.  The Settlement Provides No Preferential Treatment

The Settlement provides no preferential treatment to any individual member of the proposed Class. Under the Settlement, everyone in the class is treated identically: each class member seeking to recover a portion of the Settlement Sum must submit the same Claim Form, and each class member submitting a valid Claim will receive the same *pro rata* distribution from the Settlement Sum.

### iv.  The Settlement Is Within the Range of Possible Approval

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*.

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *E.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988).  Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See, e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  "The Court's function on this application is well known it is not to reopen and enter into negotiations with the

litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

Here, the monetary relief on a per Settlement Class Member basis and the injunctive relief agreed to by Defendant place the Settlement well within the range of possible approval. Kaufman Decl. ¶ 19. Defendant will pay $990,000 into a common settlement fund to resolve this matter. This amount is significant and exceeds the range of similar settlements. *Id*. Given the anticipated Class Member participation rate, the per Settlement Class Member recovery is expected to be approximately $100. *Id*.; *see, e.g.*, *Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV, *slip op. (D.E. 86)* (S.D. Fla. Jan. 16, 2020) (approving TCPA settlement providing a $10 voucher and $5 in cash, less attorneys' fees, costs, notice and administration costs, and service award, per claiming class member); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722, *slip op. (D.E. 44)* (S.D. Fla. Nov. 1, 2019) (approving TCPA settlement providing $9 per claiming class member, less attorneys' fees, costs, administration costs, and service award); *Cabiness v. Educ. Fin. Sols., LLC*, 2019 U.S. Dist. LEXIS 50817, at *12 (N.D. Cal. Mar. 26, 2019) ($33.36 per claimant); *In re Capital One TCPA Litig*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ($34.60).

Ultimately, any settlement requires the parties to balance the merits of the

claims and defenses asserted against the risks of continued litigation and attendant delay. Kaufman Decl. ¶ 20.  Plaintiffs and Class Counsel believe that the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial. *Id*. Defendant denies any liability and is willing to continue to defend vigorously. *Id*. The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation against Defendant through trial and potentially appeals. *Id*. Plaintiffs' counsel also has taken into account the strength of Defendant's defenses, Defendant's ability to satisfy a judgment, difficulties in obtaining class certification and proving vicarious liability, the uncertain outcome and risk of litigation especially in complex actions such as this one, the inherent delays in such litigation, and, in particular, the risk that a change in TCPA law, including a ruling by this Court that the TCPA was unconstitutional, could itself defeat Plaintiffs' claims in whole or in part. *Id*. Class Counsel believes that the proposed Settlement confers substantial and immediate monetary and non-monetary benefits upon the Settlement Class. *Id*.  Based on their evaluation of all these factors, Plaintiffs and Class Counsel have determined that the Settlement is in the best interests of Plaintiffs and the Class, who otherwise may have received nothing. *Id*.

The Settlement in the present case satisfies each of the four factors generally considered by courts in this district on preliminary approval.  Therefore, this Court should – consistent with the Eleventh Circuit's strong judicial policy favoring settlement – preliminarily approve the Settlement Agreement.

### c. __Certification of the Settlement Class is Appropriate__

Certification under Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the adjudication of the controversy.

For settlement purposes, Plaintiffs and Class Counsel respectfully request that the Court certify the Class defined in paragraph 1.1.9 of the Agreement. "[T]he 'settlement only' class has become a stock device in modern class action litigation." *In re AIG, Inc. Secs. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Certification of the proposed Class will allow notice of the Settlement to issue to inform Class Members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Litig.*, at §§ 21.632, 21.633 (4th ed. 2004). For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

The numerosity requirement of Rule 23(a) is satisfied because the Class

consists of more than 50,000 persons identifiable from the call logs produced by Defendant and its vendor in discovery, and joinder of all Class Members is impracticable. Kaufman Decl. ¶ 21; *see* Fed. R. Civ. P. 23(a)(1).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. Kaufman Decl. ¶ 21. There are multiple questions of law and fact that are common to the Class that would generate common answers. *Id*. These questions are directly guided by Plaintiffs' claims, Defendant's defenses, and are subject to class wide resolution based on common evidence, including whether the calls to Plaintiffs and other consumers were made for telemarketing purposes; whether the calls were made to Plaintiffs and other consumers without their prior express consent; whether Defendant can be vicariously liable for the calls; and whether Defendant's conduct constitutes a violation of the TCPA. *Id*.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class members, such that the typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Plaintiffs are typical because their TCPA claims and the class's claims arise from Defendant's single course of conduct and are based on the same legal theories. Leads Mogul collected Plaintiffs' and Settlement Class Members' phone numbers through

20

the same method, and called them in the same manner, and were thereafter transferred to Defendant in the same manner.  Plaintiffs therefore have the same TCPA claims as all other Settlement Class Members.

Plaintiffs and Class Counsel also satisfy the adequacy of representation requirement.  Adequacy under Rule 23(a)(4) requires (1) a plaintiff's attorney to be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff to not have interests antagonistic to those of the class.  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiffs have no antagonistic or conflicting interest with the members of the proposed class. To the contrary, Plaintiffs demonstrated their commitment to the class by actively participating in the litigation. Kaufman Decl. ¶ 22.

Further, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who has extensive experience and expertise prosecuting complex class actions, and TCPA class actions, in particular. *Id*. at ¶¶ 12-17; *see Ikuseghan v. Multicare Health Sys.*, 2015 U.S. Dist. LEXIS 99175, at *15 (W.D. Wash. July 29, 2015) (adequacy satisfied where plaintiff's counsel served as counsel "in other class action lawsuits, including a previous TCPA case"). Class Counsel has vigorously litigated this action and will continue to do so. Kaufman Decl. at ¶ 18.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a

direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). The Class readily satisfies the Rule 23(b)(3) predominance requirement because the questions common to all Class Members – including the key issues of whether Defendant is vicariously liable for the calls and whether Defendant had sufficient prior consent to make calls – focus on Defendant's conduct and can be resolved based on common evidence, including Defendant's records and Defendant's employees' testimony.

Relatedly, the Class satisfies Rule 23(b)(3)'s superiority requirement because "the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be the superior method of adjudicating" Plaintiffs' "claims under the TCPA." *See* Kaufman Decl. ¶ 23; *see Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018). As a result, the Court should certify the Class.

### d.  <u>The Court Should Approve the Proposed Notice Plan</u>

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Litig.*, § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Manual for Compl. Litig.*, § 21.312.

The Notice Plan satisfies this standard. It will inform Class Members of the substantive terms of the Settlement, and their options for remaining part of the Settlement, for objecting to the Settlement or Class Counsel's attorneys' fee application, for opting-out of the Settlement, for submitting a claim, and for obtaining additional information about the Settlement. Through the provision of (1) the Summary Notice, both directly by mail and email, if such information is available, and (2) Notice, which can be accessed on the Class Settlement Website, the Notice Plan is designed to reach a high percentage of Class Members and exceeds the requirements of Constitutional Due Process. Kaufman Decl. ¶ 7. Therefore, the Court should approve the Notice Plan and Notices.

## V. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court should set a date and time for the Final Approval Hearing, and the other deadlines in the Settlement approval process. Class Counsel propose the following schedule:

| **Event** | **Date** |
|---|---|
| Notice Date | 30 days after Preliminary Approval |
| Deadline for filing papers in support of Class Counsel's application for a Fee Award | 35 days prior to Opt-Out Deadline |
| Claims Deadline | 60 days after the Notice Date |
| Opt-Out Deadline | 60 days after the Notice Date |
| Deadline for filing Motion for Final Approval | 15 days prior to the Final Approval Hearing |

| Responses to Objections | 7 days prior to the Final Approval Hearing |
|---|---|
| Final Approval Hearing | 90 days after entry of Preliminary Approval |

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant preliminary approval to the Settlement; (2) preliminarily approve the terms of the Settlement; (3) provisionally certify the Class; (4) approve the Notice Plan and Notices; (5) approve the Claims process; (6) approve the opt-out and objection procedures; (7) appoint Plaintiffs as Class Representatives; (8) appoint Plaintiffs' counsel, Avi R. Kaufman of Kaufman P.A. as Class Counsel; and (9) schedule a Final Approval Hearing.

### Local Rule 3.01(g) Certification

I certify that counsel for Plaintiffs met and conferred with counsel for Defendant, via email and phone, and Defendant agrees with the entry of preliminary approval of the Settlement Agreement while reserving all rights.


Dated: March 16, 2023                    Respectfully submitted,

                                        */s/ Avi Kaufman*
                                        Avi R. Kaufman (FL Bar no. 84382)
                                        kaufman@kaufmanpa.com
                                        Rachel E. Kaufman (FL Bar no. 87406)
                                        rachel@kaufmanpa.com
                                        KAUFMAN P.A.
                                        237 S. Dixie Hwy, 4th Floor
                                        Coral Gables, FL 33133
                                        Telephone: (305) 469-5881

                                        *Counsel for Plaintiff and the putative Class*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 16, 2023, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, and it is being

served this day on all counsel of record via transmission of Notice of Electronic

Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*