## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

THERESA LOMAS,

    Plaintiffs,

v.     Case No. 6:22-CV-00679-PGB-DCI
                                                        LEAD CASE

HEALTH INSURANCE ASSOCIATES LLC,

    Defendants.

ROBIN TAYLOR,

    Plaintiffs,

v.     Case No. 6:22-CV-01564-PGB-DAB

HEALTH INSURANCE ASSOCIATES LLC,

    Defendants.

_____

### PLAINTIFFS AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT

## I.   INTRODUCTION

Plaintiffs and Defendant Health Insurance Associates LLC reached a class action settlement agreement ("Settlement Agreement" or "Agreement")[1] that establishes a non-reversionary Settlement Sum in the amount of $990,000 for the benefit of the Class. Defendant has also agreed, as a result of this Action, to institute enhanced policies and procedures to ensure compliance with the Telephone Consumer Protection Act. This meaningful remedial relief is itself valuable.

This is an excellent result. If approved, the settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled factual and legal questions.

On March 20, 2023, the Court preliminarily approved the settlement. ECF 30. Accordingly, Plaintiffs and Class Counsel hereby move for final approval of the settlement for the reasons set forth in this memorandum and in the papers previously submitted in support of approval. Specifically, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant Final Approval to the settlement; (2) certify for settlement purposes the Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiffs as class representatives; (4) appoint Avi R. Kaufman of Kaufman P.A. as Class Counsel; and (5) enter Judgment dismissing the action with prejudice.[2]

---

[1] The Settlement Agreement can be found at ECF 30-1. All capitalized terms used herein have the same definitions as those defined in the Agreement.

[2] A proposed order is attached as Exhibit 1.

## II. BACKGROUND

On April 7, 2022, Plaintiff Lomas filed the Complaint against Defendant in this action asserting claims under the TCPA's prerecorded voice call provision (ECF 1). On May 23, 2022, Defendant answered the Complaint denying all liability (ECF 13). The parties then participated in a Rule 26 conference and prepared a joint scheduling report and discovery plan (ECF 18).

Thereafter, the Parties engaged in written discovery involving a set of written discovery to Defendant, a set of discovery requests to Plaintiff, meet and confers through which the parties were able to resolve their discovery disputes without the need for motion practice, Plaintiff's subpoenas to Defendant's third-party vendors involved in telemarketing, and Plaintiff's review of more than ten thousand pages of electronic documents relating to Defendant's calling practices and defenses. Declaration of Avi Kaufman, attached as Exhibit 2, ("Kaufman Decl.") at ¶ 5.

On August 30, 2022, Plaintiff Taylor filed her Complaint against Defendant asserting claims under the TCPA's prerecorded voice call provision and National Do Not Call Registry provisions (Case No. 6:22-cv-01564, ECF 1). On October 12, 2022, Defendant answered the Complaint denying all liability (Case No. 6:22-cv-01564, ECF 10). After the parties met and conferred, on November 21, 2022, Defendant filed an unopposed motion to consolidate the Taylor and Lomas cases. The cases were consolidated the next day.

Plaintiffs engaged in extensive expert analysis of the call records at issue. This same analysis was then utilized at and following the mediation to assist in negotiations and inform the mediator.

On February 6, 2023, the Parties engaged in a full-day, mediation with Daniel Methe of Matrix Mediation that involved, among other things, the exchange of information concerning the Defendant's financial condition. *Id*. at ¶ 8. The Parties engaged in further negotiations ultimately reaching an agreement in principle as to a class wide resolution, culminating in the Settlement Agreement. *Id*.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potential appeals. Kaufman Decl. ¶ 9. Plaintiffs' counsel has considered the strength of Defendant's defenses, Defendant's consistent denials of liability, difficulties in obtaining class certification and proving vicarious liability, the uncertain outcome and risk of the litigation especially in complex actions such as this one, the inherent delays in such litigation, the risk that a change in the law, including a ruling by this Court concerning the constitutionality of the TCPA, could nullify Plaintiffs' claims, and, in particular, the risk that the case could be litigated to judgment only for the class to recover nothing as a result of Defendant's inability to pay. *Id*.; *see Creasy v. Charter Communs., Inc.*, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr v. Am. Assn. of Political Consultants, Inc.*, 140 S. Ct. 2335, 591 U.S. ___, (July 6, 2020), are not actionable because the TCPA was unconstitutional until a 2015 amendment was severed in *Barr*). Plaintiffs' counsel believes that the proposed settlement confers substantial and immediate benefits upon the Class whereas continued and protracted litigation, even if successful, might ultimately deliver none. *Id*. Based on their evaluation of all these factors, Plaintiffs

4

and Plaintiffs' counsel have determined that the settlement is in the best interests of Plaintiffs and the Class. *Id*.

### III.  IMPLEMENTATION OF THE PROPOSED SETTLEMENT

The Court entered its Order Granting Preliminary Approval of the Settlement on March 20, 2022. ECF 30. Both before and after that date, the Parties have worked diligently with each other and the Claims Administrator to effectuate the terms of the Settlement Agreement. Declaration of Brian Devery, Settlement Administrator, attached as Exhibit 3.

Specifically, on March 24, 2023, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), the Settlement Administrator sent the CAFA Notice to the United States Attorney General and all State Attorneys General. Settlement Administrator Decl. at ¶ 2.

The parties provided A.B. Data with electronic data files containing 50,381 unique Class Member phone numbers (the "Class List"). A.B. Data electronically processed the data through credit-bureau and/or other public-source databases to identify mailing addresses for potential Settlement Class Members on the Class List. A.B. Data then processed the names and mailing addresses through the National Change of Address Database to update any address changes on file with the United States Postal Service. This process resulted in the identification of 49,571 Settlement Class Members with a mailing address or email address. *Id*. at ¶ 4.

On April 10, 2023, A.B. Data initiated the email and mail notice program. *Id*. at ¶¶ 5-9. Individual notice was successfully sent by mail and/or email to 49,267 of

the 50,381 unique Class Member phone numbers, accounting for approximately 97.7% of the Class. *Id*. at ¶ 10.

On April 10, 2023, A.B. Data launched the class settlement website and the toll-free settlement information hotline. *Id*. at ¶¶ 11, 12. Since that time, the website has had 10,117 visits, and the toll-free settlement information hotline has received and/or returned a total of 660 calls. *Id*. at ¶¶ 11, 12.

In response to these robust notice efforts, 4,702 Class Members have submitted claims, no Class Members have opted out, and no Class Members have filed or otherwise submitted objections regarding the Settlement. *Id*. at ¶¶ 13-14. Since the claim filing deadline has not yet passed, it is expected that additional claims will be filed by members of the Class. *Id*. at ¶ 13. Based on the claims submitted to date, the claim rate is 9%. *Id*. If the Court awards the requested attorneys' fees and expenses, the anticipated per Approved Claim payment is estimated to be more than $120. *See id*. at ¶¶ 13, 16.

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v.*

*Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The settlement here is more than sufficient under Rule 23(e) and final approval is clearly warranted.

### 1. Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Lit. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit. § 21.312 (listing relevant information).

The Notice Plan satisfies these criteria. As recited in the Settlement Agreement and above, the Notice Plan informed Class Members of the substantive terms of the

7

settlement. It also advised Class Members of their options for remaining part of the Class, for objecting to the settlement, Class Counsel's attorneys' fee application, or for opting-out of the settlement, and how to obtain additional information about the settlement. The Notice Plan was designed to directly reach a high percentage of Settlement Class Members. Specifically, the individual notice portion of the Notice Plan reached more than 97% of the members of the Settlement Class, and the reach was further enhanced by the class settlement website, and the hotline. Settlement Administrator Declaration at ¶ 10.

Such a percentage far exceeds established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), available at https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of 70-95%) (last visited June 7, 2023); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class."). Therefore, the Court should approve the Notice Plan and the form and content of the Notices.

The success of the Notice Plan is evident in the 9% claim rate, which exceeds the claims rate in many cases. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving settlement class when less than 1% of class members filed claims); *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726-GOODMAN, 2015 U.S. Dist. LEXIS 151744, at *48-50 (S.D. Fla. Nov. 9, 2015) ("The question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair,

8

reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided.") (internal citations omitted).

### 2. The Settlement Should Be Approved as Fair, Reasonable, and Adequate

In deciding whether to approve the settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting Manual for Complex Litigation (Third) § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
>
> (2) the complexity, expense, and likely duration of the litigation;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the probability of the plaintiffs' success on the merits;

9

> (5) the range of possible recovery; and
>
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set forth below shows this settlement to be eminently fair, reasonable, and adequate.

### i. There Was No Fraud or Collusion

The contested nature of the proceedings in this action demonstrates the absence of fraud or collusion behind the settlement. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001). "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175, at *10 (M.D. Fla. Apr. 23, 2020) (internal citation omitted).

With the benefit of discovery, the Parties engaged in intensive arm's-length negotiations with the assistance of Daniel Methe to resolve the case with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice. *See* Kaufman Decl. ¶¶ 5, 7-8. Plaintiffs and the Class were represented by experienced counsel throughout the negotiations and benefited from mediating with a retired district court judge mediator. "The assistance of an experienced mediator in the settlement process confirms that [a] settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13,

10

2007).

### ii. The Settlement Will Avert Years of Complex Expensive Litigation

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) ("a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

In contrast, the settlement provides immediate and substantial monetary benefits and remedial relief to the Class. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present settlement.

### iii. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate

appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the settlement with the benefit of extensive discovery, including written discovery involving a set of written discovery to Defendant, a set of discovery requests to Plaintiff Lomas, ESI discovery, meet and confers through which the parties were able to resolve their discovery disputes without the need for motion practice, Plaintiff's subpoenas to Defendant's third party vendors involved in telemarketing, and Plaintiff's review of more than ten thousand pages of electronic documents relating to Defendant's calling practices and defenses. Kaufman Decl. ¶ 5.

Additionally, Plaintiffs engaged in extensive expert analysis of the call records at issue. This same analysis was then utilized at and following the mediation to assist in negotiations and inform the mediator. *Id*. at ¶ 7. Plaintiffs also spent considerable time researching and navigating Defendant's defenses.

As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the litigation proceeded to judgment on a class-wide basis and Defendant's financial condition. *Id.* ¶¶ 5-9.

### iv. Plaintiffs and the Class Still Faced Significant Obstacles to Prevailing

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993). Class Counsel believes that Plaintiffs had a strong case against Defendant. Even so, Class Counsel recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potential appeals and are mindful that Defendant advanced significant defenses that would have had to have been overcome in the absence of the Settlement, including at class certification and, in particular, that the case could be litigated to judgment only for the class to recover nothing as a result of Defendant's inability to pay. Kaufman Decl. ¶ 9. Moreover, the settlement is fair, reasonable, and adequate given the risk that, even if a class was certified, Plaintiffs and the class would not prevail on the merits of their claims, warranting final approval as class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), *and Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same) *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*,

No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the settlement providing immediate cash benefit of $990,000 to settlement Class Members and providing meaningful remedial relief, with a total estimated value to the settlement Class and the society of approximately $1,500,000, represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise."); *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604, at *27 (E.D. Cal. Nov. 10, 2011) (immediate recovery for the class is "preferable to lengthy and expensive litigation with uncertain results") (internal citation omitted).

### v. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate Compared to the Range of Possible Recovery

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

As discussed above, Class Counsel was well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, particularly in light of the risk of change in law, as well as the appropriate basis upon which to settle them. Kaufman Decl. ¶¶ 4-9. Pursuant to the TCPA, each injured Class Member could have received $500 for each violation upon a successful verdict at trial, but such a result was uncertain and may have required years of litigation, and, even then, may have resulted in no recovery at all given the changes in governing TCPA law, Defendant's financial condition and the total amount of potential damages arising from calls to Class Members.

Given the significant litigation risks the class faced, the settlement represents a successful result. Rather than facing years of costly and uncertain litigation, the settlement makes available an immediate cash benefit of $990,000 to settlement Class Members and provides meaningful remedial relief, with a total estimated value to the settlement Class and the society of approximately $1,500,000. Kaufman Decl.

15

¶ 12.

To estimate the dollar value of the injunctive relief provided to the Class and society, Plaintiffs have relied on a willingness to pay analysis developed by economists specifically for valuing injunctive relief in TCPA cases, which implies a mean value of $.2265 per call for each call prevented by the injunctive relief. *See, e.g.,* Economic Assessment of the Value of Remedial Relief in Connection with Class Action Settlement Agreement (ECF 217-1) in *Wright v. eXp Realty, LLC*, No. 6:18-CV-01851-PGB-EJK (M.D. Fla.). In this case, based on the Defendant's calling agent having made more than 500,000 unsolicited telemarketing calls in the one year preceding this filing of this action, assuming that the volume of calling would have remained the same (as opposed to increasing, as it had done in the year prior to the filing of this action), the injunctive relief is anticipated to prevent more than 500,000 calls per year, which equates to a present value of more than $500,000 for the next five years. Similar analyses have been accepted by courts for valuing injunctions and remedial relief in TCPA settlements. *See id.; Beiswinger v. West Shore Home LLC*, Case No. 3:20-cv-01286-HES-PDB, ECF 36 (M.D. Fla. May 26, 2022) (Schlesinger, J.) (granting final approval to a TCPA class settlement aided by Dr. Haghayeghi's valuation of the remedial relief).

The monetary relief alone is significant and exceeds the range of similar settlements. The amount each Claimant is expected to receive exceeds $120 – which is fair and adequate, and in fact, exceeds the amount received on a per claimant basis in the vast majority of TCPA settlements. *See, e.g., Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV-WILLIAMS/TORRES, *slip op. (D.E. 86)* (S.D. Fla. Jan.

16, 2020) (approving settlement of TCPA claims providing for $5 per class member, less attorneys' fees, costs, administration costs, and service award, and a $10 voucher); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722-CIV-DIMITROULEAS/SNOW, *slip op. (D.E. 44)* (S.D. Fla. Nov. 1, 2019) (approving settlement of TCPA claims providing for $9 per class member, less attorneys' fees, costs, administration costs, and service award).

### vi. The Opinions of Class Counsel, the Plaintiffs, and Absent Settlement Class Members Favor Approval

The settlement provides an extremely fair and reasonable recovery for the Class given the combined litigation risks, including the strength of Defendant's defenses, including to its vicarious liability, the challenges the challenging and unpredictable path of litigation, Defendant's financial condition, and the changing TCPA law landscape. Class Counsel strongly endorses the settlement given the significant risks in proceeding with litigating this case. Kaufman Decl. ¶ 9. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. [T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

To date, there have been no objections or opt outs to the settlement. Administrator Decl. ¶¶ 14, 15. Even if there were some objections (and there are

17

none at this time), it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3. The Court Should Certify the Class

This Court provisionally certified the Class for settlement purposes only. ECF 30. For all the reasons set forth in Plaintiffs' preliminary approval briefing (ECF 29), incorporated by reference herein, and the Preliminary Approval Order, the Court should finally certify the Class as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

Based on the foregoing, the Settlement Agreement is fair, reasonable, and adequate.

## V. CONCLUSION

Plaintiffs and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiffs as class representatives; (4) appoint Avi R. Kaufman of Kaufman P.A. as Class Counsel; and (5) enter Judgment dismissing the action with prejudice.

### Local Rule 3.01(g) Certification

I certify that on June 7, 2023 counsel for Plaintiffs met and conferred with counsel for Defendant, and Defendant does not oppose final approval of the class action settlement.

Dated: June 8, 2023                          Respectfully submitted,

*/s/ Avi Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S. Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Class Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 8, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*

19